Good morning, Your Honors. If it pleases the Court, Gretchen Fusilier, appearing on behalf of the petitioner-appellant, Aldorado Pitt-Pitts. This is a case arising out of Mr. Pitt's conviction for murder in 1992 via guilty plea. And just to give some background, previous to his guilty plea of murder, he was charged with robbery of the victim who died later on. At that point, after about 18 months after his conviction on the robbery, the victim died. And in the excerpts of records that's been filed by the government, along with their appellee's brief previous to my appointment on this case, the language which Mr. Pitts indicated is part of his claim in his subsequent habeas corpus petition refers to his explicit asking of the trial judge at the time of the plea to robbery, what happens if something later on happens to the victim? And I'm paraphrasing, but I can refer you to the excerpts of records. The trial judge indicates essentially, well, it's going to be pretty difficult for the government to try you on a subsequent murder case. And the judge went on to say words to the effect that someone can't be tried twice for the same offense. So 18 months later, the victim dies, and the people of the state of California, the district attorney's office, files a murder charge. He was convicted, and he pursued direct appeal procedures. He did file a petition for review with the California Supreme Court, and it was denied without comment and without citation. The procedures that lead up to this particular appeal began when Mr. Pitts filed a petition for a habeas corpus in the state court on May 21, 1996. That was denied June 13, 1996, on the merits and with an opinion by the appellate court. After that, in March 2000, March 22, 2000, Mr. Pitts then filed a subsequent habeas corpus petition. That was the statute of limitations under the new AEDPA had expired by then. That expired on April 24, 1997, because his petition was actually filed. But he would have gotten a little bit of statutory tolling for the time he was there. Slightly. So it's not sufficient. Right. It would have taken him to May 16, 1997. Right. It would not be a sufficient amount to take him to March 22, 2000. Right. So after he files in March 22, 2000, it's after the extended statute of limitations. That's correct. The statute began on April 24, 1996, and it expired one year later, April 24, 1997. Whether or not Mr. Pitts' filing of his Federal habeas corpus, which occurred in January 2001, was timely depends on whether or not his petitions for habeas corpus that were filed in the State courts beginning March 22, 2000, were timely. We submit that it was. And we want to point out to the Court that, first of all, California does have the unique habeas corpus system, as recognized by the U.S. Supreme Court case of Kerry v. Soffold. When we look at the language, therefore, of the denials, of the language used by the State courts, we find, based on explicit untimeliness, what the Court said in the April 6, 2000 proceeding were words to the effect that it had read the petition and considered it, and therefore, it was procedurally defaulted due to his unexplained delay and his failure to raise this issue previously. And there were citations made by the Court. It's our position that when the Court indicated that he had failed to explain the delay, that brings us to not a untimeliness denial, but a procedural one, more or less like that the case that was submitted by the government through a 20HJ, I think all of them were withdrawn except Gaston v. Ramirez. That had not been decided until October of 2004. In the Gaston case, this Court held that because California does have a requirement of pleading with very specificity as far as giving notice and the grounds on which the Petitioner is alleging a fundamental breach in violation, the procedural denial was not a denial on the merits. Moreover, we would indicate that when the Court, when the appellate courts did deny the 96th Petition, I mean, excuse me, the 2000 Petition, it cited N. Ray Clark, N. Ray Waltrius. The N. Ray Clark would go to the fact that he had not presented this issue, and that was the words used by the Court previously, and did not sufficiently explain the delay. Although the Court does not indicate what this issue is, I think it's reasonable to conclude that if we compare the 2000 habeas corpus Petition with the 96th habeas corpus Petition, the only new claim was the fact that the trial judge had refused to allow Mr. Pitts to withdraw his guilty plea at the time that he was charged with murder. Otherwise, I think the Court would not have been so specific to limit what issue it was referring to by the use of the language, this issue. Having that in mind, it would then make sense that the Waltrius citation applied to all of the other issues that were overlapping issues from the 1996 habeas corpus Petition. And because we know that the U.S. Supreme Court case of Yiltz v. Nennemacher or Maker held that a citation to Waltrius does not preclude and prevent Mr. Pitts from subsequently filing a petition for habeas corpus in the Federal court because a Waltrius cite is neither a denial on the merits or on timeliness or procedural grounds. Therefore, we believe that under the ruling of Keene v. Roe, when Mr. Pitts brought the 2000 petition for writ of habeas corpus, it actually related back to the 1996 petition, his attempt to perfect what were fundamental violations. And the fundamental violations were the ineffective assistance of counsel. As he indicated, counsel had failed to bring a motion for double jeopardy as the judge back in his robbery case had indicated clearly on the record would be applicable if the government or the people of California tried to prosecute Mr. Pitts subsequently, if something were to happen to the victim. He also indicated that there was misconduct by the judge as a fundamental violation, by the judge misrepresenting to Mr. Pitts and Mr. Pitts' being basically persuaded to go along with the plea because of this representation by the court. Therefore, if we find that there is a continuum between the 2000 habeas corpus and the 2006 habeas corpus, which is supported by the cases of Keene v. Roe, which is supported by the most recent case of Gaston v. Ramirez in citing a demur when the judge or the courts denying a habeas corpus does not deny it on untimeliness grounds but on basic procedural pleading grounds. And so you wouldn't read the California Supreme Court's cite to Clark and in Clark, I think Clark cites to In re Swain. That's correct. That the California Court of Appeal was not concerned with delay. I think the Clark's reference to Swain is very clearly interpreted and explained in the Ramirez v. Gaston v. Ramirez case. And it indicates that Swain essentially refers only to whether or not there was sufficient procedural pleadings equivalent to what would follow after a demur in a civil case. So, yes, I would determine that the reference to In re Clark was not a denial of untimeliness, although it did indicate you have not adequately pled sufficient facts for us to really make a determination if the delay was reasonable or unreasonable. And I say that because if the In re Clark citation was meant to deny it on untimeliness grounds, I don't believe that the reference to In re Waltrius then would have been included. It seems to be a contradiction citing both of those cases. So what do you think the California Supreme Court meant with its one-sentence denial about six months later when it said the petition for writ of habeas corpus is denied on the merits and for lack of diligence? So you have their reference to lack of diligence and you have the order by the Court of Appeal referring to unexplained delay. Your Honor, I think that is What do you make of those two orders? First of all, it's the first time that any denial included the language based on a lack of diligence. However, I think also that this is consistent with the Court's finding, I believe it was in Carey v. Saffold, where the Court used the identical language, denied on the merits and for lack of diligence. And the Court referring it back, referring the habeas corpus back, indicated that it was irreconcilable almost to have a Court deny on the merits, meaning that it actually considered the substantive issues that were pleaded in the habeas corpus and also deny it on untimeliness grounds. So I think that that language Well, courts give multiple reasons all the time for taking action of some sort. Your Honor, I understand that that's the case. However, with multiple reasons, if one, if at least part of the denial is based on the merits, and as we have indicated in our briefs, supported by case law, and that habeas corpus petition had been filed, had been properly filed, according to the unique California system, allowing a petitioner to file in subsequent ascending courts with overlapping claims in order to accomplish the intent of what a habeas corpus is, first of all, to address a wrong that is not accessible through other means at that point in time. Well, moving up the ladder, as I understand, Cary v. Saffold, as you move up the ladder in ascending order, it's supposed to do with some reasonable diligence. And the Court says, well, you know, we'd like to see what the State Court say about diligence or timeliness. And I think we basically have to look at the merits, and we should pretty much, you know, follow their assessment. On the other hand, for example, if the Supreme Court had just said denied, that's a pretty strong signal that they denied it on the merits, but timeliness wasn't a factor. That's correct, Your Honor. Denial without citation has been held to be a denial on the merits. On the merits. They don't care about the delay. You know, they're the State. It's their system. They created this kind of unique habeas procedural scheme. Your Honor, that's true. However, going back to our rationale, that because there was one non-overlapping issue that was raised in the March 2000 habeas corpus for the first time, that because that same issue was raised in the California Supreme Court, the California Supreme Court may have intended the lack of diligence to refer to the claim relating to the inability to withdraw his plea. And the on the merits could have reasonably referred to all of the other overlapping claims that had previously been filed consistently by Mr. Pitts, as well as by Mr. Pitts's attorney who represented him. Just so I have it clear, what is the one overlapping claim that you contend? There are several overlapping claims. Or in both the 2000 or the 96? The only one that's not overlapping was the reference that the judge did not allow him to withdraw his plea, as I read the claims. The overlapping ones included the ineffective assistance of counsel in failing to plea double jeopardy, in failing to investigate and prepare the case, essentially. The error by the judge, the misconduct of the judge by misleading Mr. Pitts into pleading to the robbery on the specific basis that he quelled any consideration or any concerns by Mr. Pitts, that if something such as death or something else may have happened to the victim, later on, Mr. Pitts's robbery plea insulated him from further criminal liability. So because we have one unique issue, and the Court was unclear, I think, again, we come back to the equities. And I think the equities, because there may be, I think, under these circumstances, a defendant may be allowed to rely on certainly what a judge tells him. You know, I think there are circumstances that maybe someone can misinterpret what a representing attorney tells them. But when we have on the record what the judge has said, I think equities do somewhat strongly dictate that that particular issue at least be accorded, Mr. Pitts. Do you want to save the balance of your time for rebuttal? Yes, thank you very much. Good morning, Your Honors. May it please the Court. Deputy Attorney General Zamarra Costello appearing on behalf of Respondent. Your Honors, this is a somewhat straightforward case, and I disagree with Petitioner on several legal points which I plan to address. The Petitioner in this case filed a petition in the California Court of Appeal and then did nothing for almost four years. He abandoned all of his original claims and asserted new claims in the second round. During that almost four-year gap, the statute of limitations in this case clearly expired. And I'd like to address Petitioner's assertion that there are some overlapping claims. I could not find any overlapping claims between the first petition in the Court of Appeal and the second round of petitions in the Court of Appeal in California Supreme Court. Well, they all seem to relate to his plea. Your Honor, the first set of claims appear to relate to his the proceedings regarding his second plea to first-degree murder. The second round, however, claims a breach of the prior plea agreement, and none of the ineffective assistance of counsel claims actually raise the same subclaims on the same or similar facts. For example, in the first round, Petitioner claims counsel was ineffective for failing to present a prepared defense, failing to assert double jeopardy, failing to interview witnesses, conduct an investigation, and protect Petitioner from punishment. And which one is that? The second one? That is the first ineffective assistance counsel claim in the first round in the Court of Appeal. And the claims are up here in the excerpts of records 69 to 80. Hold on one second. All right. He goes through the first one was denied effective assistance of counsel. Then he has a long factual recitation about that. And then he goes through the second one, which gets to essentially his claim of double jeopardy. That's one of the subclaims that he asserts in connection with the ineffective assistance claim. And most of the subclaims are actually summarily raised on page 71. He later goes on to discuss those in more detail. But there's a pretty concise list of his IAC subclaims on page 71. Yes. And those are the ones that I just mentioned. However, in his second round, his ineffective assistance of counsel claim. Hold on. The second one is page what? In the Court of Appeals petition, that would be on page 117. Right. He had counsel at this time. Correct. He had counsel. And here, none of the subclaims that appear on pages 70 to 71 are re-raised. There's a new theory now supporting the ineffective assistance of counsel claim. And now in this counsel petition, petitioner asserts instead that counsel was ineffective for failing to claim that his prior plea agreement had been breached. I don't see that that claim fits within any of the other subclaims raised in ground one. And that is, I think, almost the only subclaim also ineffective for failing to challenge the use of the prior plea. It's almost the exact same subclaim. That's the only subclaim raised in the second round as to trial counsel's alleged ineffectiveness. Well, then isn't that pretty close to overlapping? Your Honor, I don't believe it's overlapping because the factual basis of the claim is entirely different from the five subclaims raised in the first round. There's no allegation in the first round that counsel should have attacked the – should have raised a claim that the prior plea agreement was breached. And in the second round, he makes no mention whatsoever of double jeopardy in the petition in the court of appeal. So I don't believe that although the claims may be somewhat based on his idea that, look, I was misinformed, that the factual basis of the claims are entirely different. And in addition to the problems with comparing the claims, Petitioner cannot overcome the fact that both of the courts in the second round clearly denied the petition this untimely. Petitioner has attempted to get around that by referring to the court of appeal's reference to this issue. However, I think that a reasonable construction of the court's reference to this issue is the fact that all of the arguments made in the second round petition in the court of appeal are an attack on the validity of his plea. And so the court's reference to, you have not been diligent and you've not explained your delay with respect to this issue, I think, is reasonably construed in that manner. That's also supported by the fact that the court of appeal didn't address any particular issue separately. It didn't say as to one issue, you failed to explain your delay, and as to other issues, this is what we're going to find instead. On top of that, there's no assertion by Petitioner in his own petition, and this would be the counsel petition, that I just discovered the facts about this one claim and no argument as to that regarding other claims. There's no mention whatsoever about timeliness in the court of appeal by Petitioner in the second round, except a very boilerplate assertion in the allegation section that under the applicable standards, my petition is timely. He didn't try to parse out timeliness with respect to one claim and not others. So I don't think it's reasonable to construe the court of appeal's reference to Petitioner's failure to explain his delay by saying it only applies to this one claim and the court just simply ignored everything else. Let me ask you this. Suppose, you know, six months later, the California Supreme Court had just said Petition for De Habeas Corpus denied. That would be a more difficult situation, Your Honor, although I think in that situation That's because both courts have original jurisdiction, correct? Yes, however, under the look-through doctrine cases, the California Supreme Court's silent denial would relate back to the court of appeals' opinion saying you haven't explained your delay and you have failed to raise all these claims not only on your appeal, but also in your prior court of appeal habeas petition. So I think if the Cal Supreme had just said petition denied, then under the look-through doctrine, we could look to the basis that the court of appeal denied the petition immediately preceding this one. However, in this case, not only does the Court say I'm denying your petition on the merits, but it also says and for lack of diligence. And I have to disagree with the Petitioner's assertion of what the U.S. Supreme Court said in Carey v. Saffold. About that phrase, for lack of diligence. That's correct, Your Honor. The Court in Carey v. Saffold said, with respect to the exact same phrase, that those courts cannot by themselves indicate that the petition was timely, and that there are a variety of reasons why a court may, even though a petition is timely, alternatively decide to rule on the merits. One is to let the Petitioner know, look, we've also considered your claim on the merits, and you're not only being denied because you're untimely. And so I think it's a — it's incorrect to suggest that under Carey, this is internally inconsistent. There is nothing inconsistent about it. And under Carey, the lack of diligence finding is in no way undermined or changed by the Court's decision to also deny the petition on the merits. I can't remember off the top of my head, but what if — didn't we explore the meaning of that term a little bit further on the remand in Carey v. Saffold? Yes, Your Honor, and in that case — And what did we say about it there? In that case, Your Honor, the Court found that the lack of diligence didn't apply, I believe, to the petition before the California Supreme Court at the time, but applied to an initial petition filed by the Petitioner. There's no evidence at all in this case that the Court was not here referring to the very petition before it at the time. And, in fact, this is the only petition filed in the Cal Supreme. So I think that the lack of diligence citation by the California Supreme Court is a clear indication that that petition, which is — which is filed about six years after the Petitioner's conviction becomes final, was clearly a reference to the very petition before the Court at the time. And on that — it could not have been, as a matter of fact, the very initial petition, because that was only filed a couple of years afterwards. I think it's a clear reference to the petition at hand, and the Court found that petition to be untimely filed. I would also suggest to the Court that even if it construes the court of appeals order as being somewhat ambiguous, then this Court's decision in Gaston v. Palmer becomes relevant. In that case, the Court referred to almost the exact same factual scenario as this case and found that even when a court — State court does not enter an untimeliness finding, if the Petitioner meets three criteria, it's still going to be — there's still going to be no gap tolling. And the criteria were that a Petitioner abandons his original claims, waits four years, and then initiates a new series of petitions with new claims. That is almost exactly this case. We have a Petitioner who — You claim that the second petition was — That's correct, Your Honor. — raised new claims, not overlapping or claims that amplified the earlier claims. That's correct, Your Honor. I don't believe that simply asserting ineffective assistance in one round and ineffective assistance on the other round, where all of the actual factual bases for the claims and the subclaims themselves are entirely different, is enough to create overlapping claims, and that's exemplified in part by the ineffective assistance of appellate counsel claim. In round one, he says, my appellate attorney was ineffective for failing to raise the other two claims I'm raising here, and in round two it's completely different. My appellate attorney was ineffective for failing to challenge my plea again. So we have one petition that's really trying to challenge the existing plea, and then a second round which is really focusing back on the first plea and claiming, I'm going to attack my first plea now and see if that's going to work. And in my opinion, it doesn't. What do we do with the fact that he filed the 2000 petition in the State Court of Appeal again, as opposed to going directly to the California Supreme Court, having in 96 or 97 filed in the State Court of Appeal? Does that make a difference here? Yes, Your Honor, because it triggers an entirely new round, and therefore, this case is the court's cases in Biggs and King v. Rowe are going to apply, and the petitioner has to meet the two-strip criteria set out in those cases for attempting to get tolling. In addition, in this Court's decision in Dills v. Smollett, that is the general principle, and I believe it also said it in Dillholm v. Ramirez, as a general matter, you're not going to get tolling between rounds of petitions, and you have to meet certain limited criteria before we can grant you tolling between separate rounds, and that's what we have here, two separate rounds. So I think it makes a great deal of difference that he again went to the court of appeal, in my opinion, entirely new claims, way after the previous petition had been denied almost four years, and then again in the Cal Supreme denied for lack of diligence. So under those two different theories, Respondent believes that the Federal petition in this case was untimely by more than three and one-half years because the petitioner is not entitled to any tolling for the almost four-year delay between the two court of appeal petitions. If the Court has no further questions, I'm prepared to submit. Roberts. Thank you. Just briefly, Your Honors, I believe that at some point a determination needs to be made how broadly Mr. Pitz's allegations and claims in his subsequent habeas corpus petitions do overlap. I think in looking at the language, in reading the context of what his pleadings indicate, that there certainly is an overlapping of to what extent he believed there was an ineffective assistance of counsel. I believe that he did at some point introduce, as I've argued before and as the government actually supports, that he did introduce one new claim in the 2000 habeas corpus. But a fair reading of the excerpts of record which reflect the specific petitions, I do believe will reflect and render the reasonable conclusion that when he says the government was a stop in charging the petitioner with murder, that's the new one. But under the two, under numerals 2, 3, and 4 on excerpts of record 96, where he indicates petitioner was denied ineffective or effective assistance of counsel, and subsequently in the two June 23, 2000 petition at page, I believe it's 130 of the excerpts of record. He speaks about the challenge to the conviction. He speaks to excerpts of records 132, a brief of a plea agreement. And in this context, the Court did understand that when he refers to a plea agreement, it was not in terms of a written plea agreement, but essentially to the representations made at the time he entered the plea. Okay. We've got the ‑‑ your time is up, and we've got those documents in the excerpts of record. Thank you very much, Your Honor. I will submit it. We appreciate your arguments. Thank you very much. The matter will stand submitted. And that will end our session for today. We're being recessed until tomorrow.
judges: Hall, Paez, Beistline